UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br>JOHN E. DONOVAN<br><br>Debtor | Chapter 13<br>Case No.: 1:16-bk-11439 |
| John E. Donovan,<br>    Plaintiff/Debtor,<br><br>v.<br><br>Christiana Trust, a division of<br>Wilmington Savings Fund Society, FSB<br>as Trustee of ARLP Trust 5,<br>    Defendant. | Adv. Pro. No. 1:17-ap-01028 |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
DEBTOR'S ADVERSARY COMPLAINT**

*Now Comes,* the Defendant, Christiana Trust, a division of Wilmington Savings Fund Society, FSB as Trustee of ARLP Trust 5 ("Defendant" or "Investor"), and respectfully submits this Memorandum of Law in Support of its Motion to Dismiss for lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), made applicable by Fed. R. Bankr. P. 7012. In support, the Defendant states as follows:

### I.    INTRODUCTION

On June 24, 1988, the Debtor, John E. Donovan ("Debtor"), took out a mortgage for $85,600 on the subject property, 34 Dante Ave., Johnston, Rhode Island. The Debtor Defaulted on the loan on or about December 1, 2008, with an unpaid principle balance of over $48,000, exclusive of fees and costs. On December 18, 2015, the Defendant, Christiana Trust, a division of

1

Wilmington Savings Fund Society, FSB as Trustee of ARLP Trust 5, was assigned the mortgage. The mortgage is currently serviced by Servis One, Inc. DBA BSI Financial Services ("BSI"). BSI has attempted to collect the debt on behalf of the Defendant.

On September 7, 2017, the Debtor brought this Adversary Action. In his Complaint, the Debtor asserts that the Defendant lacks standing to enforce the Note and Mortgage because it was not a bona fide holder of the Note executed by the Debtor. The claims raised by the Debtor in the Adversary Action would have been brought in State Court had there not been a pending Chapter 13 bankruptcy action.

The Adversary Action should be dismissed because—even if the allegations are true—they fail to establish that this Court has subject matter jurisdiction over this case. This Court, in deciding *In Re Travers*, 507 B.R. 62 (Bankr. D.R.I. 2014), set forth the standard for determining jurisdiction over adversary actions. The analysis is directly applicable and analogous to case at bar, and is determinative of this Court's jurisdiction. The adversary is not a "core" proceeding, the claims are non-core and are unrelated to the bankruptcy case, and the Chapter 13 bankruptcy case has concluded. Specifically, the claims are governed by State law and do not invoke the Bankruptcy Code; the mortgage that is subject to the claims is the responsibility of the Debtor outside the Chapter 13 Plan ("the Plan"); and the Debtor has been discharged in the underlying bankruptcy action. Accordingly, the Debtor's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1).

## II.    FACTS AND PROCEDURAL HISTORY

On June 24, 1988, Debtor, John E. Donovan, executed a mortgage ("Mortgage") in favor of People's Bank N.A. on the property of 34 Dante Avenue, Johnston, Rhode Island ("Property"). *See Exhibit 1,* the Complaint at ¶ 4. The Mortgage is recorded in the land records for the City of

Johnston at book 0213 page 1168. The Mortgage secured a note executed by John E. Donovan in favor of People's Bank N.A. *Id.*  On January 29, 2009, Bank of America, National Association, Successor by merger to Shawmut Bank of Rhode Island, National Association, Formerly Known as People's Bank, N.A. ("BANA") executed an Affidavit of Lost Note. *See Exhibit 2*, 2009 Affidavit of Lost Note.  The Affidavit asserts, inter alia, that the Lender (BANA) is the lawful owner of the Note, and the lender has not cancelled, altered, assigned or hypothecated the Note. *Id.*  The Affidavit also state that the Note was not located after a thorough and diligent search. *Id.*  On August 21, 2013, BANA (Servicer) executed a second Affidavit of Lost Note. *See Exhibit 3*, 2013 Affidavit of Lost Note.  The Affidavit states that on information and belief, after due diligence, possession of the note cannot reasonably be obtained because the Note was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person. *Id.* at ¶ 6.  Based on BANA's business records, the loss of possession of the Note is not the result of a rightful transfer or a lawful seizure of the Note. *Id.* at ¶ 7.

On December 18, 2015, BANA executed an Assignment of the Mortgage to Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 5, which assignment is recorded in the land records for the City of Johnston at book 2475 page 217. *See Exhibit 4*, Assignment.

After the Debtor defaulted (December 1, 2008), BSI, servicer for the Investor sent notices to the Debtor that Investor intended to foreclose on their mortgage interest. Prior to those notices, the required mediation notices were sent to the Debtor pursuant to applicable Rhode Island Statutes, including R.I. G.L. § 34-11-22, § 34-27-3.1, and Sec. 13-216 of the Providence Code of Ordinances. *See Exhibit 5*, Notices.

On August 20, 2016, the Debtor filed a Chapter 13 Voluntary Petition. *See Exhibit 6*, Bankruptcy Docket Number 1:16-bk-11439.[1] On August 3, 2017, this Court Confirmed the Debtor's Third Amended Chapter 13 Plan. *Id.* at Document No. 71.

On September 7, 2017, the Debtor filed this Adversary Action, seeking declaratory relief, asserting that the Defendant lacks authority to enforce the Note and Mortgage because it is not a bona fide holder of the Note. *See Exhibit 1*, the Complaint. On October 30, 2017, the Trustee filed a Notice of Plan Completion and Final Report. *See Exhibit 6*, Bankruptcy Docket Number 1:16-bk-11439 at Document Nos. 76-78. On October 31, 2017, this Court Discharged the Debtor. *Id.* at Document No. 79.

### III. STANDARD OF REVIEW

"The part[y] asserting jurisdiction…[has] the burden of demonstrating the existence of federal jurisdiction." *Acosta–Ramirez v. Banco Popular de Puerto Rico,* 712 F.3d 14, 20 (1st Cir.2013). The issue of subject matter jurisdiction should be resolved before addressing the merits of the action. *See Morales Feliciano v. Rullan,* 303 F.3d 1, 6 (1st Cir.2002) ("[T]he preferred—and often the obligatory—practice is that a court, when confronted with a colorable challenge to its subject-matter jurisdiction, should resolve that question before weighing the merits of a pending action.").

When reviewing a motion to dismiss, the Court must accept the well-plead facts of the Complaint as true, but need not accept as true any allegations that are no more than "labels and

---

[1] The procedural history of this case is derived from the Debtor's Chapter 13 Bankruptcy case filed in the United States Bankruptcy Court for the District of Rhode Island, Docket Number 1:16-bk-11439 and related Adversary Action. The Court may take judicial notice of the bankruptcy docket. *In re Travers*, 507 B.R. 62, 67 (Bankr. D.R.I. 2014) (citing *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir.1999).

4

conclusions" or "a formulaic recitation of the elements of a cause of action ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A complaint must "state a claim to relief that is plausible on its face" rather than merely conceivable. *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. Also, "in ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted...." *In re Travers*, 507 B.R. 62, 66 (Bankr. D.R.I. 2014) (citing *Aversa v. United States,* 99 F.3d 1200, 1209–10 (1st Cir.1996).

## IV.    ARGUMENT

A. <u>The Bankruptcy Court Lacks Subject Matter Jurisdiction Because the Debtor's Claims Are Not Core Proceedings.</u>

This Court previously set forth the standard and analysis in determining Bankruptcy Court jurisdiction over adversary actions. The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Id.* at 68 (Citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

> [T]he district courts of the United States have "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those that are "related to a case under title 11." § 157(a). District courts may refer any or all such proceedings to the bankruptcy judges of their district… *Stern v. Marshall*, 564 U.S. 462, 473, 131 S. Ct. 2594, 2603, 180 L. Ed. 2d 475 (2011)

"The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved," differentiating between core proceedings—proceedings arising under title 11 or arising in a case under title 11—and non-core proceedings—proceedings otherwise related

5

to a case under title 11. *Stern,* 131 S.Ct. at 2603–04. Further, what type of jurisdiction, if any, a bankruptcy court has in a matter is an issue a court must determine before adjudicating the merits. *In re Travers* at 69.

In determining jurisdiction over core proceedings, the Court looks to 28 U.S.C.A. § 157(B)(2), which provides sixteen specific core matters that include, but are not limited to the following:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

Significantly, "[c]ore proceedings involve rights created by the Bankruptcy Act; they depend on the Bankruptcy Act for their existence." *In re Travers* at 69.

Here, the Debtor's claims do not fall under any of the sixteen enumerated matters set forth in §157(B)(2), and therefore cannot be considered a core proceeding. The Debtor's Adversary Complaint asserts that the Defendant lacks standing to enforce the Note and Mortgage because it is not a bona fide holder of the Note. The claims do not derive from, nor invoke, the Bankruptcy Code. In fact, the claims are governed by Rhode Island State Law. Specifically, the claims fall squarely under R.I. Gen. Laws § 6A-3-301 ("Person entitled to enforce Instrument") and § 6A-3-309 (Enforcement of lost, destroyed, or stolen instrument).

In addition, the subject mortgage falls outside of the Chapter 13 Plan. Section IV. "<u>Secured Claims</u>" in the approved Chapter 13 Plan provides that Mortgages and Other Direct Payments by Debtor will be made outside the plan according to the original contract terms, with no modification of contract terms and with liens retained. *See Exhibit 7*, Approved Chapter 13 Plan. Further, The Defendant did not file a Proof of Claim in the Ch. 13 Bankruptcy action. Accordingly, §157(b)(2) is not implicated.

Significantly, the underlying bankruptcy action has concluded as the Debtor has been discharged. On October 30, 2017, the Trustee filed a Notice of Plan Completion and Final Report.

*See Exhibit 6*, Bankruptcy Docket Number 1:16-bk-11439 at Document Nos. 76-78. On October 31, 2017, this Court Discharged the Debtor. *Id.* at Document No. 79. Since the Plan has been completed, and the Debtor has been discharged, only State law issues remain, which have no bearing on the underlying bankruptcy. As such, the adversary fails to qualify as a "core" proceeding and therefore fails to invoke subject matter jurisdiction on those grounds.

    B. <u>The Bankruptcy Court Lacks Subject Matter Jurisdiction Because the Debtor's Claims Are Non-Core Proceedings and Are Not Related to the Bankruptcy Case.</u>

The Bankruptcy Court's jurisdiction is not limited to only core proceedings. The Court may exercise jurisdiction over proceedings otherwise related to a case under title 11. A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. 28 U.S.C. § 157(c)(1). Bankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation "potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." *In re Travers* at 71 (citing *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991). However, bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164 (3d Cir. 2004) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1995)).

Here, the Debtor's claims are not "related" to the underlying bankruptcy action, nor will the outcome of the Adversary (the right to enforce the Promissory Note and Mortgage) have any effect on the bankruptcy estate. As discussed above, the Chapter 13 bankruptcy case has concluded and the Debtor has been discharged. *See Exhibit 8*, Order Discharging Debtor. Defendants aver that since Jurisdiction of bankruptcy courts are temporal, the "related to" jurisdiction of this Court evaporated upon the Debtor's discharge, and the closure of the case. *See In re Travers at 72*

8

*(citing Harris,* 450 B.R. at 335 n. 46 (quoting *VonGrabe v. Mecs (In re VonGrabe),* 332 B.R. 40, 43–44 (Bankr.M.D.Fla.2005)) ("[B]ecause discharge had issued and [the] debtor's prepetition claims were abandoned by the Chapter 7 trustee, the debtor was 'revested with the right to pursue his assorted claims against the various defendants in a more appropriate forum.' ").

Further, the Defendant has not filed a proof of claim in the Chapter 13 action. *See Exhibit 6*, Bankruptcy Docket Number 1:16-bk-11439. The subject mortgage, serviced by BSI, falls outside the Chapter 13 Plan. As such, the outcome of the Adversary Action will not have, or potentially have, some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate. Therefore, the adversary claims are non-core proceedings and not related to the underlying bankruptcy case, which has concluded.

    C. <u>The Bankruptcy Court Should Not Exercise Discretion to Retain Jurisdiction Over Adversary Proceedings Because the Bankruptcy Case has Concluded.</u>

The Bankruptcy Court may also exercise discretion to retain the adversary proceeding and decide the matter on its merits. Specifically, the Bankruptcy Court has discretion to retain jurisdiction over cases where the underlying bankruptcy proceedings have been terminated, *i.e.,* the entering of the discharge or dismissal of the main bankruptcy case. *In re Travers* at 72.[2] [A] court must consider four factors in determining whether to continue to exercise

---

[2] This Court, in *In re Travers*, relied on Judge Feeney's approach—as adopted by the Second Circuit—in determining whether the Court should retain jurisdiction of the adversary proceeding:

> We join several other circuits in adopting the general rule that related proceedings ordinarily should be dismissed following the termination of the underlying bankruptcy case. This general rule favors dismissal because a bankruptcy court's jurisdiction over such related proceedings depends on the proceedings' nexus to the underlying bankruptcy case. See In re Querner, 7 F.3d 1199, 1201–02 (5th Cir.1993); In re Morris, 950 F.2d 1531, 1533 (11th Cir.1992); In re Smith, 866 F.2d 576, 580 (3d Cir.1989). Notwithstanding this general rule, however, nothing in the Bankruptcy Code requires a bankruptcy court to dismiss related proceedings automatically following the termination of the underlying case. See, e.g., In re Querner, 7 F.3d at 1201–02; In re Carraher, 971 F.2d 327, 328 (9th Cir.1992) (per

jurisdiction: judicial economy, convenience to the parties, fairness and comity." *Id.* at 73 (quoting *In re Porges*, 44 F.3d 159, 163 (2d Cir. 1995). The Defendant addresses each factor separately.

1. Judicial Economy

The Court should not exercise discretion to retain jurisdiction over the adversary proceeding because the claims fail to involve any federal interest. The Adversary Complaint involves State law claims between the Debtor and the Defendant, and fails to implicate the Bankruptcy Code or the bankruptcy estate. The Chapter 13 case has concluded and therefore terminated any ties to the Bankruptcy Court. The court ought to have the power to relinquish jurisdiction over the adversary claim if no possible federal interest, including the interest in reducing the cost of the bankruptcy process, would be served by retention. *Id.* at 73–74 (quoting *Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 81–82 (7th Cir.1995).

Further, the Adversary was filed on September 7, 2017, less than two months prior to this Motion. The parties and the Court have invested very limited time and resources on the Adversary. There would be little waste of judicial resources if the Debtor were required to re-assert his claims in a different judicial forum. Since this matter remains in its infancy, the interests of judicial economy do not favor retention of the Adversary.

---

curiam); In re Morris, 950 F.2d at 1534; In re Roma Group, 137 B.R. 148, 150 (Bankr.S.D.N.Y.1992); In re Pocklington, 21 B.R. 199, 202 (Bankr.S.D.Cal.1982). Indeed, section 349 of the Bankruptcy Code authorizes bankruptcy courts to alter the normal effects of the dismissal of a bankruptcy case if cause is shown. See 11 U.S.C. § 349 (setting forth consequences of dismissal "unless the court, for cause, orders otherwise"). Accordingly, we hold that the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court or the district court, depending on where the adversary proceeding is pending. In re Hamilton, No. 04-10133-JNF, 2009 WL 2171097, at *6 (Bankr. D. Mass. July 15, 2009)

2. Convenience to the Parties

In weighing the convenience of the parties, the Defendant reasserts that this matter is less than two months old. The parties have not yet engaged in discovery, depositions, motion practice, or attended any Court conferences. The parties have not expended any significant resources on the adversary that would support retention. Requiring the Debtor to refile an action in the appropriate forum would cause very little inconvenience to the debtor, if any. As such, the convenience factor does not favor retention of the Adversary.

3. Fairness

Similar to applying the convenience factor, the fairness factor also fails to support retention of the Adversary. The underlying bankruptcy action has concluded, the Adversary Action is less than two months old, and the claims asserted are governed by State law. It would unfair to either party for the Bankruptcy Court to retain jurisdiction. In fact, another forum may serve the interests of the parties and provide a fairer forum to adjudicate the claims. As such, no hardship can be attributed to either party in dismissing this Adversary Action.

4. Comity

Comity is the final factor in determining whether the Bankruptcy Court shall exercise discretion to retain jurisdiction. In weighing comity, the Court shall consider whether the claims arising in this litigation would be adjudicated best by another court to provide the litigants with "a surer-footed reading of applicable law." *Id.* at 74. As discussed, the Debtor's claims are governed by Rhode Island law, specifically Gen. Laws § 6A-3-301 and § 6A-3-309 (enforcement of an instrument). Since the underlying Chapter 13 action has concluded, there are no further ties to the Bankruptcy Court.

11

The Defendant recognizes the Court's discretion in retaining jurisdiction of adversary actions. However, in weighing all factors, jurisdiction is not warranted under the facts of this case and the claims asserted in the Adversary Complaint.

### V. CONCLUSION

The Debtor's Adversary Complaint should be dismissed for lack of subject matter jurisdiction as the claims do not arise under title 11, arise in a Title 11 case, and are not related to a case under title 11. Further, the discretionary factors do not support retention of jurisdiction by the Bankruptcy Court. Accordingly, the Defendant respectfully requests that this honorable court Dismiss the Adversary Complaint for lack of subject matter jurisdiction.

                                              Respectfully submitted,
DEFENDANT, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB AS TRUSTEE OF ARLP TRUST 5,
By their attorney,

/s/ Eric B. Hogberg
Eric B. Hogberg (RI #8777)
HOUSER & ALLISON, APC
77 Franklin Street, Suite 508
Boston, MA 02110
(617) 371-0922

Dated: November 8, 2017                    ehogberg@houser-law.com

Pursuant to Local Rule 1005-1(d), within fourteen (14) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

## CERTIFICATE OF SERVICE

I, Eric B. Hogberg, hereby certify that the above-referenced document filed through the ECF system on November 8, 2017, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those, if any, indicated as non-registered participants.

/s/ Eric B. Hogberg
Eric B. Hogberg